IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KAREN MASSEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:12-CV-204 (MTT) |
| WAL-MART STORES EAST, LP, | ) ) ) |
| Defendant. | ) ) |

**ORDER**

This is a slip and fall case in which the Plaintiff was injured after she lost her footing in a puddle of water in one of Defendant Wal-Mart's stores. Wal-Mart contends the Plaintiff has not put forward sufficient evidence that it had superior knowledge of the puddle. It therefore moves for summary judgment. (Doc. 28). For the following reasons, Wal-Mart's motion is **DENIED**.

**I.  FACTS**

Around 2 p.m. June 8, 2010, the Plaintiff arrived at one of Wal-Mart's stores in Warner Robins, Georgia.[1] (Doc. 28-1, ¶ 1; Doc. 40, ¶ 1). She began shopping in the grocery department. (Doc. 28-1, ¶ 3; Doc. 40, ¶ 3). Aside from the periodic rearrangement of goods in the aisles, she was familiar with the store, which she had shopped in previously and continued to shop in after she fell. (Doc. 17 at 135:24-136:12; Doc. 28-1, ¶ 2; Doc. 40, ¶ 2). After picking up some milk, the Plaintiff walked around the corner to approach the aisle containing bottled water. As she did so, and as she was taking her first few steps down the aisle, she slipped in a pool of water and fell

---

[1] The store is located at 2720 Watson Boulevard. (Doc. 1-2, ¶ 6).

to the floor. (Doc. 17 at 64:13-20; Doc. 28-1, ¶¶ 5-6; Doc. 40, ¶¶ 5-6). In the last two steps before starting to slide, the Plaintiff was looking at the water for sale on the shelf. (Doc. 28-1, ¶ 7; Doc. 40, ¶ 7). Nothing was obstructing her view as she was walking. She did not glance at the floor before falling and did not see the water beforehand. (Doc. 17 at 174:8-11; Doc. 28-1, ¶¶ 8, 12; Doc. 40, ¶¶ 8, 12). The Plaintiff was not in a hurry when she fell. (Doc. 17 at 174:23-24; Doc. 28-1, ¶ 13; Doc. 40, ¶ 13).

     A female employee came over, asked the Plaintiff if she was okay, and helped her to her feet.[2] (Doc. 28-1, ¶ 19; Doc. 40, ¶ 19). After helping her up, the employee left and went to "the manager's office or the supervisor's office" and returned with an African-American man who the Plaintiff believed to be the manager.[3] (Doc. 17 at 175:12-177:4). When the manager arrived, he asked the employee what had happened. (Doc. 17 at 178:10-14). According to the Plaintiff, the employee reported that she had seen the Plaintiff fall and pointed to the water. The manager ordered the employee to clean it up, then turned to the Plaintiff and "apologized and [said] he was very sorry, that they were aware of the spill but they just have not gotten around to it." (Doc. 17 at 178:16-22). The Plaintiff contends the manager was referring to knowledge of the spill prior to her fall. But she admits she has no knowledge of Wal-Mart's awareness of the water other than the manager's statement. (Doc. 17 at 179:3-180:1, 180:20-181:12). After apologizing, the Plaintiff says the manager then told a second

---

[2] The Plaintiff does not know the titles or names of the employees who responded after she fell. (Doc. 17 at 177:4-8). She describes this particular woman as a short, dark-skinned African-American around 20 years old. (Doc. 17 at 160:6-23; Doc. 28-1, ¶ 20; Doc. 40, ¶ 20).

[3] The Plaintiff describes the manager as a dark-skinned, short-haired African-American man with no facial hair. She does not remember his age, height, build, or weight other than that he was taller than her. (Doc. 17 at 182:11-183:16). However, it appears, based on his testimony, this person was Assistant Manager Archie Swain.

female employee – the third person to arrive at the scene – he wanted her to take some pictures and complete a report about what happened.  (Doc. 17 at 181:20-182:8).

Wal-Mart's witnesses remember things differently.  On the day the Plaintiff fell, Archie Swain, an assistant manager at the store, says he left for lunch at 2 p.m. and returned to the store about 3 p.m.  (Doc. 34 at 10:15-16, 13:19-23).  On his way to an office in the back of the store, he came upon the scene shortly after the Plaintiff's fall.  As a member of management, he says he "immediately" apologized to her.  (Doc. 34 at 17:18-19:2).  But he "absolutely" denies telling the Plaintiff that Wal-Mart already knew about the water on the floor and had not had a chance to clean it up.  (Doc. 34 at 24:20-23).  Swain, who was the only African-American male on the scene, says he does not know how long the water was on the floor.  (Doc. 28-3, ¶ 2; Doc. 34 at 26:19-22).  Swain testifies the puddle was not reported to anyone associated with Wal-Mart and that Wal-Mart did not know about the water before the Plaintiff fell.  (Doc. 34 at 26:23-27:10).  Leah Sampson, a zone merchandise supervisor in charge of the area of the store where the Plaintiff fell, was on the scene as well.  (Doc. 35 at 11:1-3, 22:3-18, 52:23-55:3).  She also denies Swain told the Plaintiff that employees knew water was on the floor and had not had time to clean it up.  (Doc. 35 at 72:20-73:16).

After the fall, the Plaintiff saw on the floor close to the shelf a dinner-plate-sized pool of clear water.  (Doc. 28-1, ¶ 9; Doc. 40, ¶ 9).  The area was well lit and the water could be seen from a standing position.  (Doc. 28-1, ¶¶ 10-11; Doc. 40, ¶¶ 10-11).  She also noticed a water jug on the top shelf that appeared to be missing its lid.  (Doc. 28-1, ¶ 14; Doc. 40, ¶ 14).  The Plaintiff does not know how much water was in the jug, nor does she know how or when it became opened or cracked.  (Doc. 28-1, ¶¶ 15-16; Doc. 40, ¶¶ 15-16).  The Plaintiff says she had not been by or down the aisle at any point that

day before falling.  (Doc. 17 at 157:18-158:1).  Nobody else was in the aisle when she fell.  (Doc. 28-1, ¶ 18; Doc. 40, ¶ 18).

## II.  DISCUSSION

### A.  Summary judgment standard

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings."  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255.

**B. Slip and fall claims in Georgia**

An owner or occupier of land is liable in damages to invitees for injuries caused by a hazard it failed to remove in the exercise of ordinary care in keeping its premises safe.  O.C.G.A. § 51-3-1; *Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444, 679 S.E.2d 25, 28 (2009).  In a slip and fall case, a plaintiff must prove "(1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control."  *Am. Multi-Cinema*, 285 Ga. at 444, 679 S.E.2d at 27-28.  Wal-Mart argues summary judgment is appropriate in this case because the Plaintiff cannot put forward evidence sufficient to create a genuine dispute as to Wal-Mart's knowledge of the spill prior to her fall and cannot show she exercised ordinary care for her own safety.

**1. Wal-Mart's knowledge of the spill**

The Plaintiff's only evidence of Wal-Mart's actual knowledge of the spilled water is her deposition testimony that a manager told her he was sorry she had fallen and "that they were aware of the spill but they just have not gotten around to [removing] it." (Doc. 17 at 178:16-22).  Wal-Mart challenges the Plaintiff's testimony as inadmissible hearsay.  Indeed, there is no question that the manager's alleged assertion is an out-of-court statement offered as evidence to prove the truth of what it asserts.  Fed. R. Evid. 801(c).[4]  At issue, however, is whether the declaration is truly hearsay or whether it is admissible as an admission by Wal-Mart because it was made by Wal-Mart's employee.

---

[4] Initially, Wal-Mart argued Swain's comment was inadmissible hearsay based on Georgia law. Among the Georgia cases Wal-Mart cites is *Johnston v. Grand Union Co.*, 189 Ga. App. 270, 375 S.E.2d 249 (1988), a case that has long vexed observers of Georgia evidence law because of its pronouncement that "an admission against interest by an employee-agent is admissible …

- 5 -

A statement is not hearsay when it is offered against an opposing party and was made by the party's employee on a matter within the scope of that relationship. Fed. R. Evid. 801(d)(2)(D). The Plaintiff must lay a foundation to show that this otherwise excludable statement relates to a matter within the scope of the employee's employment. *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991). She may do so using circumstantial evidence. *Id.* (quoting *White Industries v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1064 (W.D. Mo.)). Wal-Mart contends the alleged statement is not admissible pursuant to 801(d)(2)(D) because the Plaintiff has not shown the person she refers to as "the manager" was a Wal-Mart employee authorized to act for Wal-Mart concerning the matter about which he allegedly spoke.

Wal-Mart rests its admissibility argument heavily on *Avedisian v. Behr Process Corp.*, an unpublished case in the Northern District of Georgia. 2011 WL 3759928 (N.D. Ga.). In *Avedisian*, a trip and fall case, the plaintiff proffered an alleged statement from an unidentified employee of the defendant as evidence of the defendant's knowledge of a hazard on its premises. *Id.* at *7. This case is distinguishable, however, as the plaintiff in *Avedisian* could only identify the employee as a Hispanic male, and there was no Hispanic employee working for the defendant at the time of the accident. *Id.* at *4. Additionally, the alleged employee did not know how to fill out a form reporting the

---

but only so long as it is not hearsay." *Id.* at 271, 375 S.E.2d at 250. *See* 58 MERCER L. REV. 151, 179-80 (2006). Under Georgia law at the time, an admission by a party's agent was hearsay but was admissible as an exception to the rule against hearsay, a point made clear in *Watson v. Kroger*, 231 Ga. App. 741, 500 S.E.2d 631 (1998). *Watson* criticized *Johnston's* confusing suggestion that agent-admissions were not admissible if they were hearsay. In any event, Georgia law, since the adoption of the Georgia Rules of Evidence, is now consistent with the Federal Rules of Evidence, and an admission by a party-opponent, or her agent, is not excluded by the hearsay rule. O.C.G.A. § 24-8-801(d)(2)(A), (D). Additionally, while Georgia substantive law applies to this diversity case, federal rules of evidence govern its proceedings. *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997). Wal-Mart appears to have since recognized this and reframed its argument under the federal rules.

incident and did not interact with any of the other defendant's employees. *Id.* at *7. The lack of evidence on these points meant it could not be determined whether the man spoke about matters within the scope of his agency. *Id.*

Unlike *Avedisian*, in this case there is more information as to the identity and scope of authority of the manager to whom the Plaintiff spoke.[5] The Plaintiff in her deposition provides sufficient circumstantial evidence that the person she refers to as "the manager" was indeed a Wal-Mart employee with supervisory authority. She testifies that he was the person who was sought out by the employee who witnessed her fall, that she saw him come out of an office in the store, that he ordered the witnessing employee to clean up the water, and that he ordered another employee to take pictures of the scene and document what happened. Moreover, there is little question that the employee who the Plaintiff alleges to be "the manager" is Swain, Wal-Mart's assistant manager who was later deposed.[6] The Plaintiff describes the manager

---

[5] The persuasiveness of *Avedisian* is further undermined in that it relies only on *Wilkinson* for authority. In *Wilkinson*, the plaintiff offered a statement from a steward on a cruise ship purportedly admitting knowledge of a defective door. 920 F.2d at 1564. The plaintiff identified the steward only as "Fletcher." *Id.* In a significant distinction from this case, the otherwise unidentified "Fletcher" was never deposed. *Id.* at 1562 n.3. Even so, the Eleventh Circuit did not find his statement inadmissible because he was insufficiently identified. Rather, *Wilkinson* was primarily concerned with whether Fletcher was authorized to act for his employer concerning the matter about which he allegedly spoke. *Id.* at 1565. The Eleventh Circuit ruled his statement inadmissible under Fed. R. Evid. 801(d)(2)(D) because stewards were not normally permitted to work in the passenger area where the defective door was located. Thus, his statement about the door did not concern a matter within the scope of his agency or employment. *Id.* at 1566-67.

[6] Wal-Mart argues further that even if the Plaintiff is referring to Swain, his alleged statement is unreliable because he does not have first-hand knowledge of what Wal-Mart knew. This contention is based on his testimony that he was not in the store immediately prior to the fall but only happened upon it after entering the store on his way back from lunch. Wal-Mart's argument is unavailing, however, because the Plaintiff places the account of his whereabouts in genuine dispute: She testifies Swain was already in a room in the back of the store and came to the scene after another employee retrieved him.

as an African-American male. As Swain testifies in his affidavit, he was the only African-American male on the scene. (Doc. 28-3, ¶ 2). He also admits making the first part of the statement the Plaintiff attributes to the unidentified manager – an apology for her fall – even though he denies admitting the store knew about the spill. (Doc. 34 at 17:18-19:2, 24:20-25:2).

More significantly, it is clear that as an assistant manager, Swain was authorized to act concerning the conditions of the store's floor. Indeed, much of his job responsibilities involve "walking the store" to ensure that everything is operating as expected. (Doc. 34 at 15:22-17:1). This includes looking out for problems with anything on the floor and participating in or overseeing "zone defenses" and safety sweeps. (Doc. 34 at 25:6-27:4). Accordingly, the manager – Swain – spoke within the scope of his employment relationship with Wal-Mart, and his alleged statement is admissible as an admission by Wal-Mart pursuant to Fed. R. Evid. 801(d)(2)(D). Because the alleged statement is admissible, the Plaintiff has created a genuine dispute as to whether Wal-Mart had actual knowledge of the hazard that caused her injury.[7] The credibility of the Plaintiff's evidence is for a jury to decide.

### 2. The Plaintiff's exercise of ordinary care

An invitee must exercise ordinary care for her own safety and use ordinary care to avoid a hazard posed by the property owner's negligence once that hazard becomes apparent or once she should have learned of it. *Robinson v. Kroger Co.*, 268 Ga. 735, 741, 493 S.E.2d 403, 409 (1997). However, she is not required to avoid hazards not usually present on the premises that she did not observe, and she is not required to

---

[7] Because the Court finds a genuine dispute exists as to Wal-Mart's actual knowledge, it does not address Wal-Mart's argument regarding constructive knowledge.

look continuously, without intermission, for defects in the floor.  *Id.*  Moreover, an invitee has not, as a matter of law, failed to exercise ordinary care simply because she admits she did not look at the site where she placed her foot or that she could have seen the hazard if she had visually examined the floor before taking that last step.  *Robinson*, 268 Ga. at 748, 493 S.E.2d at 414.  Indeed, "issues such as…how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law."  *Funez v. Wal-Mart Stores East, LP*, 2013 WL 123566, at *4 (N.D. Ga.) (quoting *Am. Multi-Cinema*, 285 Ga. at 445, 679 S.E.2d at 28)) (internal quotation marks omitted).

Wal-Mart contends that as a matter of law the Plaintiff had the chance to avoid slipping in the water and failed to do so.  Given the facts in play here, the Court disagrees.  It cannot be said that the Plaintiff's failure to observe a dinner-plate-sized spill of a clear liquid as she rounded a corner and took her first steps down the aisle is, as a matter of law, a failure to exercise ordinary care.  Spotting a clear liquid on the floor where it is not expected requires a greater attention to the floor and to each step taken than the law demands.  Further, that the Plaintiff was able to observe the water from a standing position when inspecting the scene *after* the fall is not dispositive of whether she was exercising ordinary care *before* the fall.  *Robinson*, 268 Ga. at 743, 49 S.E.2d at 410 (emphasis added) (citing *Thompson v. Regency Mall*, 209 Ga. App. 1, 3, 432 S.E.2d 230 (1993)).  The Plaintiff's level of care is an issue that should be resolved by a jury reviewing all the circumstances at the time she fell.

Accordingly, the Plaintiff has shown a genuine dispute exists as to whether she acted with ordinary care in negotiating the aisles of Wal-Mart's store.

### III. CONCLUSION

A genuine dispute of material fact exists as to whether Wal-Mart knew about the puddle in which the Plaintiff slipped.  There is also a genuine dispute regarding the Plaintiff's exercise of ordinary care.  Accordingly, Wal-Mart is not entitled to judgment as a matter of law, and its motion for summary judgment (Doc. 28) is **DENIED**.

**SO ORDERED**, this 3rd day of February, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
